STEPHENSON et al. v. TRIANGLE PUBLICATIONS, Inc.

Civ. A. No. 571.

United States District Court
S. D. Texas, Laredo Division.

March 6, 1952.

216

County, in this district and division, on November 30, 1951, and duly removed to this court on January 16, 1952.

In their petition in the state court plaintiffs alleged that defendant was a corporation with its home office and place of business in Philadelphia, Penn.; that it published a magazine known as "Official Detective Stories," circulated throughout the United States by defendant's agents and vendors, particularly in Webb County; that on or about November 30, 1951, defendant maliciously wrote, published, delivered and sold to D. C. Cooper at Laredo, Texas, the alleged defamatory matter, which appeared in the November 1950 issue of the magazine.

On December 13, 1951, plaintiffs procured the issuance out of the state court of a notice to serve non-resident which was served on defendant in Philadelphia. Although such service was ineffective (this being an action in personam), defendant, on January 16, 1952, removed to this court and here moved to quash the service of process upon it and to dismiss, setting up that, while it formerly had a permit to do business and an agent for service in Texas, it had withdrawn on November 22, 1951.

J. G. Hornberger, Laredo, Tex., for plaintiffs.

Mann & Byfield, Laredo, Tex., for defendant.

ALLRED, District Judge.

Action for damages for libel by plaintiffs, resident citizens of Texas, against defendant, a Delaware corporation. The suit was filed in the state district court of Webb

Thereupon plaintiff secured the issuance of process out of this court and had it served upon defendant's former agent for service in this state. Defendant now renews its motions, supported by affidavits, contending that the Court has no jurisdiction since an action for libel is barred in one year under the Texas statute [1] and service of process cannot be had upon a designated agent, after withdrawal, when limitation has run.[2] Defendant sets up

1. Vernon's Ann.Civ.St. Art. 5524 reading, in part, as follows: "There shall be commenced and prosecuted within one year after the cause of action shall have accrued, and not afterward, all actions * * * of the following description: 1. Actions * * * for injuries done to the character or reputation of another by libel or slander".

2. Art. 2031a, Sec. 3, provides in part that upon withdrawal of a foreign corporation from the state * * * "it shall continue to keep and maintain such agent within this State upon whom service of

process, pleadings and papers may be made, *until the statutes of limitation shall have run against anyone bringing an action against said corporation, which accrued prior to its withdrawal from this State.* In case such agent cannot be found at the address given in said power of attorney, or in case said corporation shall revoke the authority of its designated agent or fail to keep and maintain such agent within this State, after its withdrawal from this State and *prior to the time when the statutes of limitation would have run against causes of action accruing against it*, then and in

that its November 1950 issue (which carried the alleged libel) was first circulated and sold in Laredo on October 20, 1950; and elsewhere in the United States at least by October 25, 1950, and contends that this constitutes "publication," so that plaintiffs' alleged cause of action accrued at least at that time against the publisher.

C. M. Statler is an independent wholesaler and retailer of magazines in Laredo. As such he was consigned a shipment of "Official Detective Stories" and, on October 20, 1950, distributed same to various retail dealers in Laredo, for retail sale. At the same time, he commenced retail sales himself.

On November 24, 1950, Statler picked up all unsold copies of the November issue from all other retail dealers in Laredo and delivered the December issue to them. His records, however, show that 15 copies of the November issue were sold at retail between November 24 and December 2, 1950. At that time all remaining copies were mutilated and returns were sent in to defendant.

Defendant contends (1) that the action was not commenced and prosecuted within one year since the only process issued out of the state court at plaintiffs' request was the notice to non-resident which could not possibly bring the defendant before the court in an action in personam; and (2) aside from this, so far as the publisher is concerned, publication was completed when the magazines were distributed by Statler to retailers on October 20, 1950; and, in any event, by the time the unsold copies were picked up and replaced by the December issue on November 24, 1950.

"In accordance with the settled rules stated in another article, a suit in the District or County Court is commenced within the meaning of the statutes of limitation, by filing a petition *with a bona fide intent that process issue thereon*, and, *in the justices' courts,*

that event, service of process, pleading and papers of such actions may be made upon the Secretary of State of the State of Texas, and the same shall be held as due and sufficient service upon such corporation." (Emphasis supplied.)

*by the issuance of citation."* 28 Tex. Jur. 184. (Emphasis supplied.)

The other article referred to in the foregoing reads as follows:

"The ordinary civil suit in District and County Courts is commenced by filing a petition, stating a cause of action, in the office of the clerk, *with a bona fide intent,* and with an express or implied request that process issue forthwith. In contradistinction a suit is initiated in justices' court by the issuance of summons * * * *An action is not commenced * * * by the issuance of process which cannot possibly bring the de*fendant before the Court * * *." 1 Tex.Jur. 684. (Emphasis supplied.)

The last statement, emphasized above, cites, as its authority, Kern Barber Supply Co. v. Freeze, 96 Tex. 513, 74 S.W. 303, 305. But in that case, a void judgment in personam had been rendered in *justice court,* based upon a notice to non-resident served outside the state. The Texas Supreme Court there said that "the issuance of process which cannot possibly bring the defendant before the court cannot be considered the commencement of a suit"; but this was based upon the fact that the *"issuance of citation* in a *justice's court* is the *commencement* of the suit, and it is necessarily true that the process, to have that effect ( i. e. the commencement of the suit), must possess some legal validity." [3] (Emphasis supplied.)

As shown from the above quotation from Texas Jurisprudence, actions in *District* or *County* Courts are commenced by *filing a petition with a bona fide intent that process issue thereon.* In this case, plaintiffs and their attorney state upon oath that they did not know that defendant maintained an agent for service in this state until the filing of the first motion to quash setting up that fact; that they were in good faith and had a bona fide intention to obtain

3. The justice court feature seems to have been overlooked by the Court of Civil Appeals in the dicta in Wm. Bondies & Co. v. Bassel-Flewellen, 28 S.W.2d 1109, cited by defendant.

**218**

service upon defendant, if possible, at the earliest possible time. In view of the comparatively short time that elapsed, I believe the action was commenced by the filing of the petition in the state court.

A foreign corporation frequently does business in a state without securing a permit, or designating an agent for service. The question of whether certain action constitutes doing business within a state increasingly is being litigated. Here plaintiffs allege that the libel was circulated by defendant's agents and vendors. Plaintiffs' counsel was entitled to reasonable time to investigate the fact of agency and whether defendant was doing business in the state before requesting the issuance of process within the state. In addition, while a non-resident notice is not sufficient to authorize a judgment in personam, such process has sometimes resulted in a non-resident defendant attempting to appear specially, which, under the Texas rule, is an appearance for all purposes for the next term of Court. This may have been plaintiffs' hope in requesting the clerk to issue non-resident notice. Defendant's first point is overruled.

The question remains, however, was the action filed within one year after the cause of action accrued? The complaint alleges a sale to D. C. Cooper "on or about November 30th, 1950." The record shows that, so far as the publisher is concerned, publication commenced in Laredo on about October 20 and was concluded on November 24, 1950.

 The general rule is that publication of a magazine is complete at the time it is mailed to subscribers and dealers if the publisher does nothing further—the so-called single publication rule, that one issue, although it consists of many copies, widely distributed, gives rise to only one cause of action against the publisher.[4] There is no Texas decision on the point although the courts have held, *in an action against a local dealer,* that each time a libelous book

or paper is sold, a new publication takes place.[5] Here, however, Statler was acting as an independent local dealer when he sold the magazine, not as an agent of defendant. Any publication or circulation by defendant had been completed when Statler received and distributed the consignment on October 20; or, at least, by the time he distributed the December issue on November 24, 1950.

 There is no claim of republication or reprinting, or even of the sending out of additional copies by defendant. In the absence of any Texas decision to the contrary, I hold that plaintiffs' action against the publisher was barred on November 30, 1951, when plaintiffs' petition was filed in the state court. Since limitation had run, there could be no valid service on the designated agent after defendant withdrew, under Art. 2031a, footnote 2 supra.

Defendant's motion to quash and dismiss will be granted. The Clerk will notify counsel to submit an order accordingly.

---

4. Annotations 1 A.L.R.2d 384, 392; 53 C. J.S., Libel and Slander, § 84, p. 136; Winrod v. McFadden Publications, 7 Cir., 187 F.2d 180. Cf. 20 Tex.Law Review 640.

5. Renfro Drug Co. v. Lawson, 138 Tex. 434, 160 S.W.2d 246, 146 A.L.R. 732, holding, however, that a sale to plaintiff's attorney, after he was employed to bring the suit, or to any person acting for the plaintiff, does not constitute circulation of the libel.